|   |   |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **DISTRICT OF NEVADA** | |
| * * * | |
| TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 DEFINED CONTRIBUTION PENSION TRUST FOR SOUTHERN NEVADA, *et al.*, | Case No. 2:15-cv-02129-APG-NJK |
| | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | (ECF No. 54) |
| COMMERCIAL UNION TILE & STONE, INC., *et al.*, | |
| Defendants. | |

On November 21, 2016, the plaintiffs filed a motion for summary judgment against defendants Commercial Union Tile & Stone, Inc.; Vegas Affordable Stone and Tile, Inc. (VAST); and Jonathan William Canja.[1] ECF No. 54. None of these defendants opposed the motion. I nevertheless must ensure the plaintiffs met their burden under Federal Rule of Civil Procedure 56 of showing no genuine fact dispute remains and they are entitled to judgment as a matter of law. *See In re Rogstad*, 126 F.3d 1224, 1227 (9th Cir. 1997). When, as here, "the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

The plaintiffs are collectively bargained multi-employer fringe benefit trust funds created pursuant to written declarations of trust and collective bargaining agreements between multi-employer associations and the International Union of Bricklayers and Allied Craftworkers, Local

---

[1] The plaintiffs also moved for summary judgment against Jedediah Feller and Stone Consulting, LLC, but those parties subsequently settled. *See* ECF Nos. 76, 77.

Union No. 13 ("Local 13").[2] Defendant Commercial Union is a signatory to a collective bargaining agreement (CBA) with Local 13, pursuant to which Commercial Union agreed to make fringe benefit contributions to the plaintiffs for all hours Commercial Union's employees performed work covered by the Local 13 CBA.

Defendant Canja was an owner and officer of Commercial Union. Canja also operated VAST, a company owned by defendant Jedediah Feller. Canja was responsible for controlling the labor relations for Commercial Union and VAST, and he was responsible for supervising the companies' employees. Commercial Union and VAST are involved in the tile and masonry industry within Local 13's jurisdiction.

Commercial Union and VAST failed to submit timely reports or contributions to the plaintiffs, and refused to submit to audits even though the CBA allows the plaintiffs to conduct audits to ensure compliance with the CBA and with the Employment Retirement Income Security Act of 1974 ("ERISA"). Through discovery, the plaintiffs were able to conduct an audit for the period of December 1, 2014 through April 30, 2016. The audit showed Commercial Union had not made all required contributions. The plaintiffs thus demanded payment but no payments were made. This court previously ordered that the audit report "shall be accepted as fact" and Commercial Union "will not be permitted to enter a defense as to the accuracy of the audit report and auditor assumptions." ECF No. 51 at 1.

**A. Commercial Union and Vast**

The plaintiffs submit evidence showing that Canja operated VAST as a non-union alter ego to Commercial Union. Although VAST was owned by Feller, Canja conducted all substantive operations, including signing contracts, making bids, and supervising employees. VAST and Commercial Union shared employees but VAST did not provide any pension or health care benefits for its employees. When Canja would bid on projects for the two companies, he would make Commercial Union's bid higher by forty percent or more for labor.

---

[2] Local 13 is also a named plaintiff.

Based on these facts, and as more fully set forth in the motion with citation to the supporting evidence, the plaintiffs have met their initial burden of showing that Commercial Union breached the CBA and violated 29 U.S.C. § 1145 by failing to make contributions to the plans as required under the CBA. The plaintiffs have also met their initial burden of showing that Commercial Union and VAST are alter egos. *See S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1031 (9th Cir. 2009). Although the two entities do not share common ownership, they do share common management, operations, and labor relations. *See id.* Additionally, the plaintiffs have presented evidence that Canja operated the two entities to avoid CBA obligations by inflating Commercial Union's bids by forty percent or more and by using the same employees to perform both companies' work. *Id.* at 1032.

Because the plaintiffs bear the burden of proof on the question of alter ego, "they had the burden of establishing a prima facia case on their motion for summary judgement." *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). Having met that burden by presenting evidence that, if left uncontroverted, would show that Commercial Union and VAST were alter egos, "it became incumbent on [the defendants] to set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). Neither Commercial Union nor VAST oppose the motion.[3] I therefore grant the plaintiffs' motion as to Commercial Union and VAST.

Section 1132(g)(2) of ERISA provides that when an employment benefit trust obtains judgment in its favor for unpaid contributions, the court "shall" award the trust unpaid contributions, interest on the unpaid contributions, liquidated damages, and reasonable attorney's fees and costs. They are also entitled to "such other legal or equitable relief as the court deems

---

[3] VAST previously filed its own summary judgment motion. ECF No. 55. That motion was withdrawn as part of a settlement in which the parties contemplated that an order in favor of the plaintiffs against VAST would result from the plaintiffs' unopposed motion for summary judgment. ECF Nos. 74, 83 at 2.

appropriate." 29 U.S.C. § 1132(g)(2)(E).  Audit costs "are recoverable under subsection (E)." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988).

The evidence in this case supports the following awards:

(a) unpaid contributions in the amount of $200,729.76;

(b) pre-judgment interest on the unpaid contributions in the amount of $26,824.30 through November 21, 2016; and

(c) liquidated damages in the amount of $33,605.87.

Additionally, the plaintiffs are entitled to reasonable attorney's fees and costs in the amount of $84,390.37 ($75,090.00 in fees and $9,300.37 in costs).  Finally, the plaintiffs are entitled to the audit costs in the amount of $31,713.44.

**B. Canja**

The plaintiffs also move for summary judgment against Canja personally, arguing unpaid contributions are trust assets when the governing trust agreements identify them as such, and Canja is an ERISA fiduciary with respect to those assets because he controlled whether Commercial Union made the due and owing contributions.  They assert he breached his fiduciary duties by not making the required contributions and instead paying his own personal expenses out of VAST and Commercial Union accounts.

As relevant in this case, a person is a fiduciary for an ERISA plan if he exercises authority or control over management or disposition of plan assets. 29 U.S.C. § 1002(21)(A)(i).  An ERISA fiduciary must ensure that plan assets "never inure" to the employer's benefit and are "held for the exclusive purposes of providing benefits to participants in the plan." *Id.* § 1103(c)(1).  Any person who breaches a fiduciary obligation under ERISA "shall be personally liable to make good to such plan any losses" resulting from the breach. *Id.* § 1109(a).

1. Are Unpaid Contributions Plan Assets?

ERISA does not define what constitutes plan assets.  However, the United States Court of Appeals for the Ninth Circuit has "consistently held that unpaid contributions by employers to employee benefit funds are not plan assets." *Bos v. Bd. of Trustees*, 795 F.3d 1006, 1009 (9th Cir.

2015) (citing *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000)). Some courts have recognized an exception to this general rule when the plan document clearly and expressly defines plan assets to include unpaid but due and owing contributions. The Ninth Circuit refused to recognize that exception in the context of 11 U.S.C. § 523(a)(4) (which prohibits bankruptcy discharge for debts arising from "fraud or defalcation while acting in a fiduciary capacity"). *Id.* at 1009-11. However, in *Carpenters Pension Trust Fund for Northern California v. Moxley*, the Ninth Circuit indicated that a trust fund had made a "persuasive case" that unpaid contributions could be considered plan assets given the plan language in that case (although it declined to decide the issue). 734 F.3d 864, 869 (9th Cir. 2013). Trust language that courts have found to trigger the exception include plan assets being defined as sums "due and owing," "sums that shall be paid," sums for which the employer is "immediately liable," and sums that "become [plan] assets on the Due Date." *Trs. of the Teamsters Local 631 Security Fund for S. Nev. v. Polson*, No. 2:11-cv-00924-LRH-VCF, 2012 WL 5378175, at *2 (D. Nev. Oct. 30, 2012).

The plaintiffs are six trust funds. Only one trust's declaration contains language similar to that which courts have found clearly and expressly identifies unpaid contributions as plan assets. The Bricklayers & Allied Craftworkers Local 13 Vacation Fund declaration defines the assets of the fund to "consist of the sums of money that have been or will be paid or which are due and owing to the Fund by the Employers as required by the Collective Bargaining Agreements and any and all other Contributions and Payments to the extent permitted by law." ECF No. 54-3 at 55.

However, the remaining funds' declarations do not fall within the exception. The plaintiffs do not provide the declaration for the Bricklayers and Trowel Trades International Health Fund, so there is no evidentiary basis to conclude that plan assets are defined to include unpaid but due and owing contributions.

The other funds contain general references to monies contributed or received, but do not clearly and expressly define plan assets to include unpaid but due and owing contributions. The

declaration of trust for the Bricklayers & Allied Craftworkers Local 13 Pension Trust defines the trust fund to include "[a]ll funds contributed to the Trust by the Employers and all monies, properties, and other things of value which may be contributed to or otherwise become part of the Trust from time to time, together with the income and increment thereof, and all investments made therewith, less disbursements therefrom . . . ." ECF No. 54-3 at 39. The contemplation of future contributions does not clearly and expressly make unpaid but overdue contributions plan assets.

The Bricklayers & Allied Craftworkers Local 13 Health Benefits Fund defines the fund to mean "generally the monies or other things of value which comprise the corpus and additions to the trust." ECF No. 54-3 at 87-88, 102. It defines contributions to mean the contributions "made or required to be made by Employers to the fund." *Id.* at 88. But it does not unambiguously define unpaid but required contributions as plan assets.[4] The reference to future contributions that are "required to be made" is ambiguous because it is contained within the definition of contributions, not within the definition of the trust or its assets. The definition of the trust does not refer specifically to contributions. Contemplating the fact that future contributions will be made does not clearly and expressly define unpaid but due and owing contributions as plan assets.

The Bricklayers and Trowel Trades International Pension Fund defines the fund to mean the "entire trust estate . . . including but not limited to, all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds and other sums payable to the . . . Trustees on account of such contracts) all investments made and held by the . . . Trustees, all income, increments, earnings and profits therefrom, and any and all property and funds received and held by the . . . Trustees by reason of their acceptance of this Trust Agreement." EC FNO. 54-4 at 10-11. Finally, the International Masonry Institute defines the trust to include "the monies and other assets held under this Agreement and Declaration of Trust

---

[4] Another judge in this district found this language sufficient. *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for So. Nev. v. Granite Works, Inc.*, 2:10-cv-00767-HDM-PAL, 2011 WL 3159099, at *3 (D. Nev. July 26, 2011). I conclude the language is too ambiguous to impose fiduciary duties that may result in personal liability.

as well as future contributions provided for under collective bargaining agreements or otherwise."[5] ECF No. 54-4 at 42. Such general descriptions and "unadorned reference[s]" to contributions do not suffice to trigger the exception. *Polson*, 2012 WL 5378175, at *3 (holding insufficient plan language defining the trust as "all of the assets of whatever kind which, from time to time, comprise the trust estate of this trust").[6]

The plaintiffs argue that because they are given authority to interpret the plan documents, and they interpret the plans to mean that unpaid contributions are plan assets, Canja is an ERISA fiduciary with respect to unpaid contributions. However, a person "should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003). Consequently, where, as here, "contractual language is facially ambiguous and not anchored by the clear, shared intent of the parties, then fiduciary responsibility under ERISA predicated on [that] language is improper." *Id.* at 1016. The plans cannot create that liability through their unilateral interpretation of otherwise ambiguous plan language.

Finally, the plans argue Canja knew he was a fiduciary because the plans previously obtained a default judgment against him. However, that district judge found only three of the plans had language that could possibly subject Canja to personal liability as a fiduciary. *See Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for So. Nev. v. Granite Works, Inc.*, 2:10-cv-00767-HDM-PAL, 2011 WL 3159099, at *3 (D. Nev. July 7 26, 2011). Thus, Canja was aware of the risk that a court may find that he was a

---

[5] Another judge in this district found this language sufficient. *Granite Works, Inc.*, 2011 WL 3159099, at *3. I disagree for the reasons explained above.

[6] *See also Unite Here Health v. Gilbert*, No. 2:13-cv-00937-JAD-GWF, 2015 WL 5766511, at *5 (D. Nev. Sept. 30, 2015) (holding exception did not apply where the trust language referred to "[a]ll funds contributed to the Trust by the Employers and all monies, properties, and other things of value which may be contributed to or otherwise become part of the Trust from time to time . . . ."); *Bonilla v. E.G. Const.*, No. C-05-3151 MMC, 2007 WL 2317589, at *5 (N.D. Cal. Aug. 10, 2007) (holding exception did not apply where trust language defined contributions as a "payment made or to be made to the Fund by an Individual employer").

fiduciary with respect to three of the plans. I conclude only one clearly and expressly imposes fiduciary obligations for unpaid but owed contributions.

The plaintiffs do not suggest any other basis to impose fiduciary liability on Canja. I therefore deny the plaintiffs' motion for summary judgment against Canja (except for the Vacation Funds) because unpaid employer contributions are not plan assets.

### 2. Did Canja Have Discretionary Authority Over the Vacation Fund Plan Assets?

Determining that the Vacation Fund defines plan assets to include unpaid but due and owing contributions is not the end of the inquiry. The Vacation Fund also must show that Canja had discretionary authority over those unpaid contributions. Simply being an owner and officer of Commercial Union and an operator of VAST is insufficient. *See Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1461 (9th Cir. 1995) (determining fiduciary status involves "an objective evaluation of functions performed"). The Vacation Fund must point to evidence that Canja exercised control or authority over whether contributions would be made by, for example, showing that he had the authority to determine "which of the company's creditors would be paid or in what order." *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (quotation omitted).

The Vacation Fund points to evidence that Canja was responsible for preparing contribution forms for Commercial Union employees who performed covered work under the CBA and that if there were payroll issues, Marilyn Canja would contact Canja about those issues. The Vacation Fund also presents evidence that Canja was responsible for all significant decisions and was the main point person for operating both Commercial Union and VAST. Finally, the Vacation Fund presents evidence that Canja paid his personal expenses out of VAST and Commercial Union accounts, thus showing he had control over decisions about what creditors to pay and in what order. The Vacation Fund therefore has met its initial burden of showing Canja had discretionary authority over unpaid contributions. Canja has not opposed the motion and therefore this evidence stands uncontroverted.

/ / / /

/ / / /

### 3. Did Canja Breach His Fiduciary Duties?

Finally, the Vacation Fund must show Canja breached his fiduciary obligations. The Vacation Fund has done so because it has presented evidence that Canja used Commercial Union and VAST accounts to pay his own personal expenses but did not ensure that contributions were made as required. Canja has not opposed the motion and therefore this evidence stands uncontroverted.

I therefore grant the Vacation Fund's motion for summary judgment against Canja on its breach of fiduciary duty claim under 29 U.S.C. § 1109(a). Pursuant to the auditor's report, the total unpaid contributions to the Vacation Fund plus interest through the date of the auditor's report is $41,224.51. ECF No. 54-7 at 7.

**C. Conclusion**

IT IS THEREFORE ORDERED that the plaintiffs' motion for summary judgment **(ECF No. 54) is GRANTED in part and DENIED in part**.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of plaintiffs and against defendants Commercial Union Tile & Stone, Inc. and Vegas Affordable Stone and Tile, Inc., joint and several, for the following amounts:

Unpaid contributions: $200,729.76

Interest on unpaid contributions: $26,824.30

Liquidated Damages: $33,605.87

Attorneys' Fees: $75,090.00

Costs: $9,300.37

Audit Fees: $31,713.44

Total: $377,263.74.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of plaintiff Trustees of the Bricklayers & Allied Craftworkers Local 13 Vacation Fund and against defendant Jonathan William Canja in the amount of $41,224.51.

IT IS FURTHER ORDERED that the plaintiffs shall show cause by August 21, 2017 why I should not enter judgment in defendant Canja's favor on the breach of fiduciary duty claim with respect to all plaintiffs except the Vacation Fund. *See* Fed. R. Civ. P. 56(f) (providing that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant").

DATED this 4th day of August, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE